

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-09-00214-CV

_____

**DORIS IMOGENE BAKER, CAROL BECK,
DANIEL BECK, PATRICIA BROOKS,
ROBERT BROOKS, EVELYN ELLIOTT,
JUDY EVANS, CONNIE FICKLE,
DOROTHY MILBERGER, AND LIONEL MILBERGER,**

**Appellants**

 **v.**

**ENERGY TRANSFER COMPANY, D/B/A
ETC TEXAS PIPELINE, LTD. AND BURLINGTON
RESOURCES OIL & GAS COMPANY, LP,**

**Appellees**

_____

**From the 82nd District Court
Robertson County, Texas
Trial Court No. 06-09-17,609-CV**

_____

## MEMORANDUM  OPINION

_____

In September 2006, Appellants sued Energy Transfer Company (ETC) and

Burlington Resources Oil & Gas Company, LP (Burlington), alleging numerous causes

of action pertaining to the venting of hydrogen sulfide from ETC's natural gas treating

plant, which is near Appellants' residences.  After the trial court denied Appellants'

request for a temporary injunction, the case lay dormant for a year and a half.

In May 2008, the trial court entered an agreed scheduling order that required Appellants to designate experts and provide expert reports by November 15, 2008. That deadline was extended by agreement to December 15. After Appellants unsuccessfully sought another extension of that deadline from the trial court on December 14, they served their designation of experts on December 15 and hand-delivered alleged reports and supporting documents the next day.

ETC and Burlington jointly moved to strike Appellants' expert designation on the grounds that it was inadequate and incomplete. After a hearing, the trial court granted the motion to strike. ETC and Burlington then filed traditional and no-evidence motions for summary judgment, which the trial court granted. The trial court also sustained ETC and Burlington's objections to Appellants' summary-judgment evidence. Raising five issues, Appellants assert that the trial court erred in granting the motions to strike and for summary judgment and in sustaining the objections. By cross-appeal, ETC and Burlington assert that the trial court erred in not awarding them their court costs.

## Expert Designation

Under the agreed scheduling order, Appellants were required "to designate experts and provide reports with all materials required by Rule 194.2(f)." *See* TEX. R. APP. P. 194.2(f); 195.5. The purpose of Rule 194.2(f) is "to give the opposing party sufficient information about the expert's opinions to prepare to cross-examine the expert and to prepare expert rebuttal evidence." *Miller v. Kennedy & Minshew, P.C.*, 142

S.W.3d 325, 348 (Tex. App.—Fort Worth 2003, pet. denied). Expert reports serve a similar purpose; such disclosures and expert reports not only prevent trial by ambush, but affect the opposing party's preparation for trial. *See Baize v. Scott & White Clinic,* No. 03-05-00780-CV, 2007 WL 135956, at *7 (Tex. App.—Austin Jan. 22, 2007, pet. denied) (mem. op.); *see also Hull v. South Coast Catamarans, L.P.,* --- S.W.3d ---, ---, 2011 WL 1835309, at *5 (Tex. App.—Houston [1st Dist.] May 12, 2011, pet. filed).

A failure to properly designate expert witnesses results in the automatic exclusion of the expert testimony unless the offering party demonstrates good cause for the failure or a lack of unfair surprise. *See* TEX. R. APP. P. 193.6(a); *Perez v. Embree Constr. Group, Inc.,* 228 S.W.3d 875, 884 (Tex. App.—Austin 2007, pet. denied). We review the trial court's striking of Appellants' designation of experts for an abuse of discretion. *See Mentis v. Barnard,* 870 S.W.2d 14, 16 (Tex. 1994); *Perez,* 228 S.W.3d at 884.

ETC and Burlington contend that Appellants' expert designation failed to meet the requirements of Rule 194.2(f) and that Appellants failed to provide final expert reports. Appellants contend that they met the rules' requirements and provided the reports that were required.

Rule 194.2(f) provides for the disclosure of the following for testifying experts:

(1) the expert's name, address, and telephone number;
(2) the subject matter on which the expert will testify;
(3) the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise subject to the control of the responding party, documents reflecting such information;
(4) if the expert is retained by, employed by, or otherwise subject to the control of the responding party:
  (A) all documents, tangible things, reports, models, or data

> compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and
> (B) the expert's current resume and bibliography;

Tex. R. App. P. 194.2(f)

Appellants designated experts in four areas: (1) medical; (2) engineering and scientific; (3) environmental health; and (4) real estate valuation.

*Medical*: For their medical experts, which Appellants assert are non-retained experts, Appellants designated over twenty health-care providers and their custodians of records. Appellants stated that the subject matter on which these persons would testify included the matters in their records and incorporated by reference all the information in their records, including opinions about Appellants' "pain, mental anguish, medical care, medical expenses, limitations, disfigurement, physical impairment, wage earning capacity, surgery, or any other medical issue in this case." Appellants did not provide any mental impressions or opinions of these persons or a brief summary of their bases, instead referring to previously tendered medical and billing records that reflect the opinions.

But as ETC and Burlington point out, Appellants did not identify any particular document containing opinions about the many above topics, and none of the allegedly "previously tendered" documents were included with the documents tendered with the expert designation. And for the two dozen or so identified health-care providers, Appellants did not state which type of care or medical field was involved. Under all of these circumstances, we cannot say that the trial court abused its discretion in striking the designation of medical experts. *See, e.g., Cirlos v. Gonzalez*, No. 04-02-00095, 2002 WL

31423885, at *2 (Tex. App.—San Antonio Oct. 30, 2002, pet. denied) (mem. op.) (holding trial court did not abuse its discretion in excluding non-retained physician's expert opinion where plaintiff had directed the opposing party to physician's records).

*Engineering and scientific*:  In the engineering and scientific area, Appellants identified two experts, Galen Hartman and Lionel Milberger, one of the appellants, and produced their purported reports.  We agree with ETC and Burlington that one of Hartman's produced reports is actually just a pre-suit interim memorandum to Appellants' original attorney.  It is dated March 17, 2006 and contains mostly detailed background information and a host of recommendations regarding what information and documents should be obtained.  It plainly is not an expert report that discloses Hartman's mental impressions and opinions and the basis for them.  The other alleged Hartman report (it references Hartman's company and office address) is an undated and unsigned two-page document with no heading or letterhead.  While it does contain some mental impressions and opinions, we agree with ETC and Burlington's characterization of it as a draft.

Appellants produced a number of report-like documents and test data authored or collected by Milberger, who appears to have some type of industrial background or experience.  ETC and Burlington note that Appellants did not produce Milberger's test specimens.

Finally, Appellants did not provide Hartman's and Milberger's current resumes and bibliographies.  And with regard to both of these experts, Appellants did not state the general substance of their mental impressions and opinions and did not provide a

brief summary of the basis for them; they simply referred to these experts' reports.

Based on the inadequate and incomplete nature of Appellants' designation of Hartman and Milberger, we cannot say that the trial court abused its discretion in striking their designation.

*Environmental health*: Appellants designated Debra L. Morris as an expert who would testify about health effects from chronic low-level exposure to hydrogen sulfide. Appellants did not provide Morris's current resume and bibliography, nor did they state the general substance of her mental impressions and opinions or provide a brief summary of the basis for them; they referred to her report. Her "report" is actually a journal article that she co-authored and was published in 2001; it is not an expert report containing Morris's mental impressions and opinions pertaining to this litigation. Given these deficiencies, we cannot say that the trial court abused its discretion in striking Appellants' designation of Morris.

*Real estate valuation*: Appellants designated Appellant Dorothy Milberger, Rudy Robinson III, and Mark O. Sikes as experts on the valuation of the various properties owned by Appellants. As for Robinson and Sikes, Appellants admit that they did not produce reports by them, stating that Robinson and Sikes had not provided any services and that Appellants anticipated they would be called as rebuttal witnesses, if at all. But as anticipated rebuttal experts, Appellants were still required to provide the information required by the scheduling order and the rules. *See Moore v. Memorial Hermann Hosp. Sys., Inc.,* 140 S.W.3d 870, 875 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Accordingly, the trial court did not abuse its discretion in striking the designation

of Robinson and Sikes.

As for Dorothy Milberger, Appellants produced as her apparent report an October 15, 2005 letter that she wrote to the Robertson County Appraisal District about the value of her and Lionel's property. Additionally, Appellants did not provide Dorothy's current resume and bibliography, nor did they state the general substance of her mental impressions and opinions or provide a brief summary of the basis for them. Given these deficiencies, we cannot say that the trial court abused its discretion in striking Appellants' designation of Dorothy Milberger.

In conclusion, because we cannot say that the trial court abused its discretion in striking Appellants' designation of experts, we overrule issue one.

## Summary Judgment

The trial court granted ETC's and Burlington's traditional and no-evidence motions for summary judgment. We review a trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In reviewing a traditional motion for summary judgment, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). We must consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion. *See id.* at 756.

A no-evidence motion for summary judgment is essentially a motion for pretrial directed verdict. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581 (Tex. 2006); *see also*

*Humphrey v. Pelican Isle Owners Ass'n,* 238 S.W.3d 811, 813 (Tex. App.—Waco 2007, no pet.). Once such a motion is filed, the burden shifts to the nonmoving party to present evidence raising an issue of material fact as to the elements specified in the motion. *Tamez,* 206 S.W.3d at 583. The nonmovant must produce "summary judgment evidence raising a genuine issue of material fact." TEX. R. CIV. P. 166a(i). A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex. 2003). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.* On the other hand, the evidence amounts to no more than a scintilla if it is "so weak as to do no more than create a mere surmise or suspicion" of fact. *Id.* When determining if more than a scintilla of evidence has been produced, the evidence must be viewed in the light most favorable to the nonmovant. *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 601 (Tex. 2004).

*Negligence and negligence per se*: In their second issue, Appellants complain that the trial court erred in granting summary judgment on their negligence and negligence per se causes of action. To prove a negligence cause of action, a plaintiff must show that the defendant breached a duty that was owed to the plaintiff and that the breach proximately caused the plaintiff's injury. *See Western Investments, Inc. v. Urena,* 162 S.W.3d 547, 550 (Tex. 2005). To establish a negligence per se cause of action, a plaintiff must prove: (1) the defendant's act or omission is in violation of a statute or ordinance; (2) the injured person was within the class of persons which the ordinance was

designed to protect; and (3) the defendant's act or omission proximately caused the injury. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 549 (Tex. 1985); *Ambrosio v. Carter's Shooting Ctr., Inc.,* 20 S.W.3d 262, 265 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *see also Ibarra v. Hines Land Group, Ltd.,* No. 10-09-00231-CV, 2010 WL 2869814, at *7 (Tex. App.—Waco July 21, 2010, no pet.) (mem. op.).

The record shows that Burlington has drilled approximately forty natural gas wells in Robertson County. The gas from Burlington's wells is treated at the Franklin Treating Plant, which ETC operates. ETC filed evidence that the plant operates under a permit by rule from the Texas Commission on Environmental Quality (TCEQ). The permit letter states that the plant is "an amine gas treating plant to remove acid gas (carbon dioxide and hydrogen sulfide [$H_2S$]) from a natural gas stream."

Appellants alleged generally that "Defendants" (Burlington and ETC) breached their duty to operate the plant prudently by operating it to allow poisonous chemicals into the atmosphere and onto Appellants' property and further failed to warn the community of the dangers of exposure. They also alleged that Burlington was negligent in the operation of its "wells and facilities" and in its training, hiring, retention, supervision, and provision of "personnel safety equipment and hazard communications" for its employees.

One of the grounds in Burlington's no-evidence motion for summary judgment was that there is no evidence that Burlington breached its ordinary or any statutorily imposed duty of care in connection with its drilling and production operations. In addition to alleging violation of a duty of ordinary care, Appellants allege that

Burlington and ETC have violated numerous environmental and Railroad Commission rules and regulations. In response to Burlington's and ETC's summary-judgment motions, the affidavit of each appellant was filed.[1] Setting aside for the moment the many sustained objections to the affidavits, none of the affidavits specifically address at all the breach by Burlington of any duty.[2] Accordingly, the trial court did not err in granting summary judgment on this ground on Appellants' negligence and negligence per se claims against Burlington.

ETC moved for summary judgment on the ground that Appellants have no evidence that, as the result of any act of ETC, Appellants were in fact exposed to a toxic substance, or if so, (1) the amount or duration of any alleged exposure; (2) that the source of the alleged toxins is the ETC Plant; or (3) that the plant operations produced an amount of the alleged toxins to be a substantial factor in causing Appellants' alleged injuries. Burlington also moved for no-evidence summary judgment on this ground.

Causation in fact requires that the defendant's conduct be a substantial factor in

---

[1] All of the affidavits were identical, except for the Milbergers' affidavits, which had an extra paragraph but were otherwise identical. The trial court sustained all of Burlington and ETC's objections to Appellants' affidavits; these rulings essentially struck all of the affidavits.

[2] In their brief, Appellants assert that "Appellees" breached their duty by the plant's emission of "noxious, odiferous and deadly fumes that have caused severe health symptoms to the Appellants." Appellants cite their affidavits as evidence of this breach. The affidavits state that the plant emits "noxious, poisonous, odiferous and deadly chemicals" that go onto Appellants' property. As we have just noted, this statement is not evidence of a breach of duty, rule, or statute. Further, Burlington objected to these statements as conclusory, and the trial court correctly sustained those objections. *See Willis v. Nucor Corp.*, 282 S.W.3d 536, 548 (Tex. App.—Waco 2008, no pet.) ("'A conclusory statement is one that does not provide the underlying facts to support the conclusion.'"). The trial court also did not abuse its discretion in sustaining Burlington's objections that Appellants were not qualified to give such expert testimony and that Appellants were in any event precluded from offering expert testimony (their own or others) by the trial court's striking of Appellants' expert designation, which we held above was not an abuse of discretion. *See Sanders v. Shelton*, 970 S.W.2d 721, 727 (Tex. App.—Austin 1998, pet. denied) (reviewing trial court's rulings on objections to summary-judgment evidence for abuse of discretion). Appellants' objected-to affidavits thus present no evidence of breach by Burlington.

bringing about the plaintiff's injury. *See Borg-Warner Corp. v. Flores,* 232 S.W.3d 765, 770 (Tex. 2007). In a case alleging toxic exposure, causation evidence should be premised on evidence from an expert on (1) whether the disease (or injury) can be related to chemical exposure by a biologically plausible theory; (2) whether the plaintiff was exposed to the chemical in a manner that can lead to absorption in the body; and (3) whether the dose the plaintiff was exposed to is sufficient to cause the disease (or injury). *See id.* at 771; *Boyd v. Texas Utils. Elec. Co.,* No. 10-08-00172-CV, 2009 WL 2901926, at *1 (Tex. App.—Waco Sept. 9, 2009, no pet.) (mem. op.); *see also Koehn v. Ayers,* 26 F. Supp.2d 953, 955-56 (S.D. Tex. 1998), *aff'd,* 194 F.3d 1309 (5th Cir. 1999) (citing *Allen v. Pennsylvania Eng'g Corp.,* 102 F.3d 194, 199 (5th Cir. 1996)).

The requirement of expert testimony in this case is obvious. *See, e.g., Borg-Warner,* 232 S.W.3d at 770-71; *Cain v. Rust Industrial Cleaning Serv's., Inc.,* 969 S.W.2d 464, 468 (Tex. App.—Texarkana 1998, pet. denied) (citing *E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 559-60 (Tex. 1995)); *Allen v. Roddis Lumber & Veneer Co.,* 792 S.W.2d 758, 763 (Tex. App.—Corpus Christi 1989, no writ); *see also In re Allied Chem. Corp.,* 227 S.W.3d 652, 656 (Tex. 2007). Because Appellants' experts were stricken, they have no such causation evidence from an expert. Summary judgment on this ground for ETC and Burlington on Appellants' negligence and negligence per se claims was thus proper.[3] *See Baize,* 2007 WL 135956, at *9 (affirming summary judgment granted

---

[3] ETC and Burlington also sought and obtained summary judgment on Appellants' claims for damages to their real and personal property allegedly caused by ETC's and Burlington's negligence. As with their claims for personal injuries, Appellants likewise produced no admissible expert testimony on causation relating to their property damage claims. *See Cain,* 969 S.W.2d at 469-70. Summary judgment on the claims for property damage was thus proper.

after trial court had denied plaintiffs leave to designate experts in case requiring expert testimony). We overrule issue two.

*Nuisance per se*: In issue three, Appellants contend that the trial court erred in granting summary judgment on their nuisance and nuisance per se causes of action. Appellants alleged a claim for nuisance per se based on ETC's operation of the plant and its alleged discharge of air contaminants and based on alleged discharge of air contaminants from Burlington's gas wells.

To prove a cause of action for nuisance per se, the plaintiff must establish that the defendant's activity (1) can be considered a nuisance at all times, under any circumstances, and in any location, or (2) violates a state statute or municipal ordinance declaring the activity to be a nuisance per se. *Aguilar v. Morales,* 162 S.W.3d 825, 836 (Tex. App.—El Paso 2005, pet. denied); *Luensmann v. Zimmer-Zampese & Associates, Inc.,* 103 S.W.3d 594, 598 (Tex. App.—San Antonio 2003, no pet.); *Maranatha Temple, Inc. v. Enterprise Prods. Co.,* 893 S.W.2d 92, 100 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

ETC moved for summary judgment on the ground that Appellants' nuisance per se claim failed as a matter of law because "ETC's operation of the plant, which was permitted by the TCEQ, (a) cannot be considered a nuisance at all times, under any circumstances, and in any location, and (b) does not violate any state statute or municipal ordinance declaring the operation of a natural gas treating plant to be a nuisance per se. Burlington moved for summary judgment on the ground that Appellants' nuisance per se claim failed as a matter of law because its oil and gas

operations are not a nuisance per se as a matter of law.

Appellants alleged that ETC and Burlington violated numerous administrative rules, but they do not point to any statute or ordinance that declares the operation of a natural gas treating plant to be a nuisance per se. Moreover, ETC filed its TCEQ permit as summary-judgment evidence of its lawfulness, and a lawfully run oil and gas plant or drilling operations cannot be a nuisance per se. *See Rankin v. FPL Energy, LLC,* 266 S.W.3d 506, 512 (Tex. App.—Eastland 2008, pet. denied); *Maranatha,* 893 S.W.2d at 100; *see, e.g., Domengeaux v. Kirkwood & Co.,* 297 S.W.2d 748, 749 (Tex. App.—San Antonio 1956, no writ). The trial court did not err in granting summary judgment on Appellants' nuisance per se claim.

*Nuisance:* Appellants alleged a nuisance claim, alleging that ETC's and Burlington's conduct interferes with the quiet and peaceful possession of their property and deprives them of the use and enjoyment of it. They claimed that the nuisance has caused damages to their real and personal property and to their health and well-being.

> Texas law defines "nuisance" as "a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities." *Schneider Nat'l Carriers, Inc. v. Bates,* 147 S.W.3d 264, 269 (Tex. 2004). Nuisance claims are frequently described as a "non-trespassory invasion of another's interest in the use and enjoyment of land." *See, e.g., GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet,* 61 S.W.3d 599, 615 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

*Rankin,* 266 S.W.3d at 509.

To prove a nuisance claim, a plaintiff must show that the defendant interfered with or invaded the plaintiff's interest, resulting in a condition that substantially

interfered with the plaintiff's private use and enjoyment of the land and that caused physical or emotional harm to the plaintiff or physical harm to the plaintiff's property. *See Texas Woman's Univ. v. Methodist Hosp.,* 221 S.W.3d 267, 285 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Aguilar v. Trujillo,* 162 S.W.3d 839, 851 (Tex. App.—El Paso 2005, pet. denied); *Watson v. Brazos Elec. Power Co-op., Inc.,* 918 S.W.2d 639, 644 (Tex. App.—Waco 1996, writ denied).

Burlington and ETC sought summary judgment on Appellants' nuisance claim on the ground that there was no competent evidence that any act of ETC or Burlington caused the alleged nuisance and any injuries. As with Appellants' negligence claim, ETC and Burlington argue that there is no evidence in the form of expert testimony that they caused the alleged harm from the nuisance. Appellants did not file competent expert testimony that ETC or Burlington caused harm to Appellants.[4] *See, e.g., Cain,* 969 S.W.2d at 470; *see also Aguilar,* 162 S.W.3d at 851. The trial court did not err in granting summary judgment on Appellants' nuisance claim. We overrule issue three.

*Trespass:* In issue four, Appellants contend that the trial court erred in granting summary judgment on their trespass cause of action. Appellants alleged that ETC and Burlington "intentionally or negligently *caused* the poisonous chemicals described above to enter onto the Plaintiffs' lands and properties and that such entry is without the Plaintiffs' permission, and the proximate cause of the damages and injuries set forth

---

[4] Appellants' affidavits purport to offer testimony that their land was "inundated with noxious poisonous, odiferous and deadly chemicals that were being emitted from the treatment plant." The trial court correctly sustained ETC and Burlington's objections that Appellants were not qualified to give such expert testimony and that Appellants were in any event precluded from offering expert testimony (their own or others) by the trial court's striking of Appellants' expert designation. Appellants' objected-to affidavits thus present no causation evidence for their nuisance claim.

below." [Emphasis added.]

Trespass to real property occurs when a person enters another's land without consent. *Wilen v. Falkenstein*, 191 S.W.3d 791, 797 (Tex. App.—Fort Worth 2006, pet. denied). To recover damages, a plaintiff must prove that (1) the plaintiff owns or has a lawful right to possess real property; (2) the defendant entered the plaintiff's land and the entry was physical, intentional, and voluntary; and (3) the defendant's trespass caused injury to the plaintiff.[5] *Id.* at 798; *see also Rankin v. FPL Energy, LLC,* 266 S.W.3d 506, 509 n.4 (Tex. App.—Eastland 2008, pet. denied). Trespass does not have to be committed in person, but may be caused by allowing or causing something to cross the boundary of property. *Villarreal,* 136 S.W.3d at 268 (citing *Gregg v. Delhi-Taylor Oil Corp.,* 344 S.W.2d 411, 416 (Tex. 1961)); *City of Arlington v. City of Fort Worth*, 873 S.W.2d 765, 769 (Tex. App.—Fort Worth 1994, writ dism'd w.o.j.).

ETC moved for summary judgment on the ground that Appellants have no competent evidence that ETC caused any unauthorized entry of any substance on Appellants' properties. Burlington moved for summary judgment on the ground that Appellants have no competent evidence of any unauthorized entry of any substance on Appellants' land as the result of Burlington's actions. Thus, as with Appellants' negligence claim, ETC and Burlington argue that there is no evidence in the form of expert testimony that they caused the alleged poisonous chemicals to enter onto

---

[5] In their trespass claim, Appellants further alleged that excessively loud noise and bright lights were released from the Defendants' facilities and intruded on Appellants' properties. None of Appellants' objected-to affidavits mention noise or lights, and, in any event, Texas law requires a physical entry onto property to sustain a trespass claim. *See Villarreal v. Grant Geophysical, Inc.,* 136 S.W.3d 265, 267-70 (Tex. App.—San Antonio 2004, pet. denied). Therefore, to the extent Appellants' trespass claim was premised on noise and lights, summary judgment was proper.

Appellants' properties. We agree; Appellants did not file competent expert testimony that ETC or Burlington caused chemicals to enter onto Appellants' land.[6] *See, e.g., Cain*, 969 S.W.2d at 470; *see also Aguilar*, 162 S.W.3d at 851; *cf. Stevenson v. E.I. du Pont de Nemours & Co.*, 327 F.3d 400, 405-08 (5th Cir. 2003) (affirming jury verdict on trespass claim for emissions from nearby petrochemical plant, based on *expert testimony*). The trial court did not err in granting summary judgment on Appellants' trespass claim. We overrule issue four.

*Objections:* In issue five, Appellants assert that the trial court erred in sustaining ETC and Burlington's objections to Appellants' summary-judgment evidence. We have addressed the objections necessary to decide the above issues. Moreover, the trial court correctly sustained the remaining objections of which Appellants complain. We overrule issue five. Having overruled Appellants' issues, we affirm the trial court's orders granting summary judgment for ETC and Burlington.

## Costs

In their cross-appeal, ETC and Burlington assert that the trial court erred in not awarding them their court costs. In its orders granting summary judgment, the trial court did not address court costs. ETC and Burlington filed a bill of costs and sought entry of a final judgment that awarded them costs. At the hearing, the trial court took that matter under advisement and then issued a letter ruling stating that each party was to bear its own costs.

---

[6] As we have noted, the trial court correctly sustained ETC and Burlington's objections to Appellants' affidavits that purported to offer testimony that their land was "inundated with noxious poisonous, odiferous and deadly chemicals that were being emitted from the treatment plant." Appellants' objected-to affidavits thus present no evidence of trespass by ETC or Burlington.

Trial courts are generally required to tax costs against the unsuccessful party. TEX. R. CIV. P. 31. But, they have the discretion to tax costs otherwise for good cause stated on the record. TEX. R. CIV. P. 141. The Texas Supreme Court has recognized that conduct unnecessarily prolonging and obstructing a trial can constitute good cause. *See Rogers v. Walmart Stores, Inc.,* 686 S.W.2d 599, 601 (Tex. 1985). Conversely, the court has held that a party's emotional distress at having to pay costs, inability to pay, and a trial court's perceived fairness do not constitute good cause. *See Roberts v. Williamson,* 111 S.W.3d 113, 124 (Tex. 2003) (fairness when considering how to apportion the guardian ad litem's fees could be considered good cause, but the record must establish more than the trial court's perception of general fairness); *Furr's Supermarkets, Inc. v. Bethune,* 53 S.W.3d 375, 378 (Tex. 2001) (emotional distress at having to pay costs and inability to pay are not good cause).

*Rankin,* 266 S.W.3d at 515.

The trial court did not explain its reason for ruling that each party was to bear its own costs, and upon receipt of the ruling, no party requested the trial court to state good cause on the record. Accordingly, we reverse the cost ruling and remand the case to the trial court to reconsider the taxing of costs and to state good cause on the record should it not tax costs against Appellants. *See, e.g., Rankin,* 266 S.W.3d at 515-16 (remanding case to trial court to reconsider taxing of costs).


REX D. DAVIS
Justice

Before Chief Justice Gray
        and Justice Davis[7]
Affirmed in part; reversed and remanded in part
Opinion delivered and filed October 19, 2011[8]
[CV06]

---

[7] The Honorable Felipe Reyna, a former justice on this court, was on the panel and present for argument, but having left office on December 31, 2010, he did not participate in this decision. *See* TEX. R. APP. P. 41.1(c).

[8] Due to a typographical error, the Memorandum Opinion, but not the judgment, issued September 28, 2011 is withdrawn and replaced with this opinion issued on October 19, 2011.